IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION


**ACCENTCARE HOME HEALTH
OF ROGUE VALLEY, LLC,**

Case No. 1:16-cv-01393-CL

Plaintiff,

v.

**REPORT AND RECOMMENDATION**

**JASON BLISS, CAROLINE BREEDING,
TERA CUMMINGS, STEVEN SCOTT,
HEALTHY LIVING AT HOME – EAST
BAY, LLC, HEALTHY LIVING AT
HOME, INC.,**

Defendants.

_____

CLARKE, Magistrate Judge

Plaintiff AccentCare Home Health of Rogue Valley, LLC, ( "AccentCare") brings this

cause of action against the defendants, Jason Bliss, Caroline Breeding, Tera Cummings, Steven

Scott, Healthy Living at Home – East Bay, and Healthy Living at Home, Inc., for

misappropriation of trade secrets and confidential information, tortious interference with

business and economic relations, and with contracts, unfair competition, and civil conspiracy.

The case comes before the Court on the defendants' Motion to Dismiss or Stay (#25) and

Request for Judicial Notice (#42). For the reasons below, the Motion to Dismiss or Stay (#25)

should be DENIED, and the Request (#42) should be GRANTED.

## BACKGROUND

Plaintiff AccentCare is a provider of comprehensive home health services in and around Jackson County, Oregon. Services offered include skilled nursing and rehabilitative therapy to help with recovering from or managing a chronic condition, palliative care, behavioral health care to assist those with late life depression and dementia, personal care services such as bathing, dressing, meals, and medication reminders, daily medical home care of children and adults, and care management, among others. Such services take place in the patients' homes – whether a single-family home, apartment, an assisted living facility, or independent living facility.

According to the Complaint, Defendant Healthy Living at Home, Inc., ("HLH") is a provider of similar services. HLH is a California corporation, with its principal place of business in San Jose, California; it is alleged to have several different operating branches relevant to this action, including Defendant Healthy Living at Home – East Bay, LLC, ("HLH-East Bay"), and non-party Healthy Living at Home – Medford, LLC, ("HLH-Medford"). Individual defendants are Jason Bliss, HLH CEO and co-founder, Caroline Breeding, HLH COO and co-founder, Tera Cummings, HLH-East Bay co-owner, and Steven Scott, HLH Director of Accounting. Individual defendants are all residents and citizens of California.

Plaintiff alleges that HLH, HLH-East Bay, Bliss, Breeding, Cummings, and Scott, (collectively, "California defendants"), conspired with two AccentCare senior management employees, Amber Swan and Rhonda Harsh-Haynes, to tortiously interfere with Plaintiff's business, unlawfully recruit AccentCare employees, and poach AccentCare's clients and customers. Specifically, Plaintiff alleges that the California defendants planned and executed a scheme by which they targeted the senior management of AccentCare and recruited them to leave AccentCare, breach their employment contracts, take account information and other

proprietary information, solicit other employees to join them, and ultimately create a new branch of HLH in Medford, Oregon. Plaintiff claims that defendants conspired to hide their interference activities by creating a Craigslist ad so that AccentCare employees could pretend to anonymously apply for a job with HLH-Medford, even though they had already been solicited by the defendants through Swan and Harsh-Haynes. Based on these allegations, and others, Plaintiff alleges that the California defendants conspired to disrupt and destroy Plaintiff's business operations, while unlawfully building HLH-Medford for their own benefit. Finally, Plaintiff claims that this was not just a one-time scheme, but a pattern of behavior, and an on-going effort by the defendants to destroy a number of similar businesses in different locations and open new branches of HLH in those locations. Defendants deny these claims.

On November 14, 2014, Plaintiff initiated an action against HLH-Medford, Amber Swan, and Rhonda Harsh-Haynes ("state defendants"), in Jackson County Circuit Court in Medford, Oregon, ("state court action") based on the same or similar alleged facts and occurrences alleged in the case at bar. On December 29, 2015, Plaintiff sought to amend its state court complaint to add claims against Jason Bliss, Caroline Breeding, Tera Cummings, HLH, and HLH-East Bay. Plaintiff claims that it learned in discovery that the California defendants had orchestrated the plan to disrupt and destroy AccentCare's business, and had enacted the plan with the help of the state defendants. Both the California defendants and the state defendants opposed the joinder of the California defendants in the state court action. The state court denied Plaintiff's motion on March 25, 2016. On July 8, 2016, Plaintiff filed the Complaint in the case at bar in federal court, alleging diversity jurisdiction.

## DISCUSSION

The California defendants move to dismiss Plaintiff's Complaint (#1) for failure to join Amber Swan, Rhonda Harsh-Haynes, and HLH-Medford as necessary and indispensable parties under Federal Rules of Civil Procedure 12(b)(7) and 19. Alternatively, they move to stay the case pending the resolution of the related state court action. Defendants Steven Scott and HLH-East Bay also move to dismiss the claims against them for lack of personal jurisdiction. For the reasons below, the motion (#25) should be denied in its entirety.

## I.     The state defendants are not necessary and indispensable parties.

Subject to narrow exceptions, a plaintiff is ordinarily free to choose whom to sue. *See J. Moore et al.*, 16 *Moore's Federal Practice* § 107.14[2][c] (3d ed 2005) ("*Moore's Federal Practice* ") ("In general, the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder [of] necessary parties."). Those exceptions are described by Federal Rule of Civil Procedure 19, which provides the standards for determining whether dismissal of an action for non-joinder of an absent party is required. Rule 19(a) sets out a two-part analysis: (1) the court must determine whether the absent party is "necessary" to the action, and (2) if a party is necessary but joinder is not feasible, the court must determine whether the party is "indispensable," and, in equity and good conscience, whether the action should proceed without the absent party.

### (a) The state defendants are not necessary parties.

In determining whether a party is necessary, the court considers whether:

> (1) in that person's absence, the court cannot accord complete relief among the parties, or
> (2) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> i.  as a practical matter impair or impede the person's ability to protect the interest; or

ii. leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A)-(B). "Complete relief" refers to relief "as between the persons already parties, not as between a party and the absent person whose joinder is sought." 3 *Moore's Federal Practice* ¶ 19.07–1[1], at 19–93 to 98 (2nd 1980), quoted in *Eldredge v. Carpenters 46 N. Cal. Counties Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir.1981).

It is well settled law that "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp.*, 498 U.S. 5, 7, (1990) (citation omitted). While it is true that joint tortfeasors may be necessary when the missing party "maintains practical control over the actions at issue," *Hashop v. Fed. Home Loan Mortg. Corp.*, 171 F.R.D. 208, 211 (N.D. Ill. 1997), the simple fact that Plaintiff will have to show that the missing party took some unlawful action, such as breaching a contract or participating in the tort, does not make that party indispensable. *See Kirschenbaum v. Asta Healthcare Co.*, 2013 WL 5718436, at *2-3 (N.D. Ill. Oct. 21, 2013), (citing *Salton, Inc. v. Philips Domestic Appliances & Personal Care B.V.*, 391 F.3d 871, 880 (7th Cir.2004)).

In *Salton,* two competing makers of kitchen appliances sued each other over the misappropriation of a design of single-serve coffee-brewing machines. 391 F.3d at 874. The machine was manufactured for Phillips under contract by E&E, a Hong Kong firm, using proprietary information provided by Phillips. *Id.* E&E promised in the contract not to reveal any of this information to third parties, and it agreed that Phillips maintained proprietary interest in any and all developments in the machine design. *Id.* After an alleged breach of that contract, Phillips sued E&E in the High Court of Hong Kong claiming that E&E used the proprietary

information in making a competitor's machines. Later Phillips attempted to bring related claims against the competitor, Salton, in a suit filed in Chicago for copyright infringement and misappropriation of the coffee machine design. There, the Court of Appeals for the Seventh Circuit considered whether E&E, as the intermediary between the two parties, was necessary and indispensable to the case. The court noted that Phillip's essential claim in the Chicago action was that Salton stole its intellectual property, and "the fact that Salton did so. . . in cahoots with E&E, which acted in effect as the conduit between [the two], would not make E&E an indispensable party." The court determined that E&E was not a necessary and indispensable party because "the victim of a tort is entitled to sue any of the joint tortfeasors and recover his entire damages from that tortfeasor." *Id.* at 877. "The defendant may have a right to contribution (i.e., to a sharing of the pain) from the other tortfeasors, but the victim is not required to sue more than one of his oppressors." *Id.*

Similarly, in *Kirschenbaum*, the court determined that the missing party was not necessary, even though the plaintiff would have to establish that the missing party breached a contract with the plaintiff in order to prevail on a tortious interference with contract claim against the defendants. 2013 WL 5718436, at *2. The court noted that "there is no rule that you cannot sue the interferer without suing the party to your contract whom the defendants inveigled into breaking the contract." *Id.* at 2 citing *Salton*, 391 F.3d at 880 ("When a plaintiff is harmed by the acts of several persons, all may be essential sources of evidence in a suit against any. But if this possibility automatically required that all be joined, the rule that joint tortfeasors are not, by virtue of their jointness, indispensable parties, and the extension of that principle to the case in which the plaintiff is harmed by a breach of contract procured by a tortfeasor whom the plaintiff has sued without joining the contract breaker, would be overthrown.")

In this case, Plaintiff brings five claims against the defendants: 1) misappropriation of trade secrets and confidential information, 2) tortious interference with business and economic relations, 3) tortious interference with contract, 4) unfair competition, and 5) civil conspiracy. Based on these claims, Plaintiff's prayers for relief include: a) actual and compensatory damages, b) punitive damages, c) pre- and post-judgment interest, d) disgorgement and/or forfeiture of the profits, revenues, compensation, distributions, etc., attributable to defendants' unlawful acts, e) an accounting of such ill-gotten profits, f) reimbursement of the salary, benefits, and other amounts paid by AccentCare to Swan and Harsh-Haynes, g) attorney's fees and costs, h) other relief the Court deems proper.

Both parties overstate their position as to the state defendants' significance to these claims. Plaintiff asserts that none of the claims are dependent upon the acts and conduct of the state defendants. California defendants assert that "every single claim is primarily – if not solely – based on the actions of the [state] defendants." As discussed below, while the claims involve the actions and conduct of the state defendants, and the state defendants may be essential sources of evidence in this case, Plaintiff has properly alleged that they are joint tortfeasors with the California defendants. Plaintiff is not required to sue all alleged joint tortfeasors in one action. Additionally, the state defendants will be able to defend their conduct in the state court action, and any award based on joint and several liabilities in one suit will be offset in the other. The state defendants are therefore not necessary to the case.

### 1. Misappropriation of trade secrets

To establish a claim under Oregon's Uniform Trade Secrets Act, a plaintiff must demonstrate that (1) the subject of the claim qualifies as a statutory trade secret; (2) the plaintiff employed reasonable measures to maintain the secrecy of its trade secrets; and (3) the conduct of

the defendants constitutes statutory misappropriation. *W. Med. Consultants, Inc. v. Johnson*, 835 F.Supp. 554, 557 (D.Or.1993) aff'd, 80 F.3d 1331 (9th Cir.1996). Under ORS § 646.461, "misappropriation" means not only wrongful disclosure of a trade secret, but also "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Or. Rev. Stat. § 646.461(2)(a), (b). "'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy or espionage through electronic or other means." Or. Rev. Stat. § 646.461(1).

In order for Plaintiff to assert this claim against the California defendants, it must allege that the client lists and other subjects of the claim qualify as trade secrets, that AccentCare employed reasonable measures to maintain secrecy, and that the California defendants acquired the trade secrets by one of the improper means listed, such as "inducement of a breach of a duty to maintain secrecy." A review of the Complaint shows that Plaintiff has sufficiently alleged facts to support this claim. The state defendants are alleged to have been involved in the misappropriation, potentially even as key players in the tort. However, as the court determined in *Salton*, even an intermediary joint tortfeasor who is crucial to the action that caused the misappropriation is not a necessary party to the claim. 391 F.3d 871.

Additionally, in Oregon, the statutory definitions above make it clear that the acquirer of the trade secrets can be sued separately from the person who disclosed them, if the acquirer knew or should have known that the secrets were improperly acquired. The California defendants may seek to show that HLH-Medford was the only entity that acquired any improperly disclosed information, but Plaintiff alleges that the California defendants were the instigators and the ultimate beneficiaries of the scheme – the ultimate acquirers, in other words. Therefore, again, like the ultimate acquirer in *Salton*, the intermediary is not a necessary party.

While HLH-Medford, Swan, and Harsh-Haynes may claim an interest in defending their conduct and involvement in this incident, they will be able to do so in the state court action. Any damages awarded to Plaintiff in this case or the state court action will offset the other. *See Kirschenbaum*, 2013 WL 5718436, at *3 ("If Plaintiff sues [the missing party] in state court, any damages awarded to Plaintiff in this action would likely offset an award in state court—Plaintiff cannot 'double dip' by collecting twice for one injury under both contract and tort.").

Therefore, complete relief can be granted, the absent parties' interests will not be unprotected, and none of the existing parties will risk incurring double, multiple, or inconsistent obligations. The state defendants are not necessary parties as to this claim.

### 2. Tortious interference with business and economic relations and contract

To prove a claim under Oregon law for intentional interference with contract, "which is also referred to as 'intentional interference with economic relations,'" *Simpson v. Held*, 2007 WL 1667148, at *6 (D. Or. June 1, 2007), a plaintiff must prove:

> (1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.

*Cron v. Zimmer*, 255 Or. App. 114, 125, 296 P.3d 567, 575 (2013) (quoting *McGanty v. Staudenraus*, 321 Or. 532, 535, 901 P.2d 841 (1995).

In this case, Plaintiff has alleged that the California defendants knew that Swan and Harsh-Haynes were bound by employment contracts and non-solicitation agreements with AccentCare, yet California defendants induced them to misappropriate client lists, to recruit other employees improperly, and to commit other unlawful acts in order to harm Plaintiff's business. Intentional interference is a claim that, by definition, is alleged against a third party,

not against the employee who has breached a contract or other direct business relationship with the plaintiff. There is no authority for the idea that the party with the direct relationship must be a named defendant as well. For the same reasons discussed above regarding the misappropriation claim, state defendants are alleged to be joint tortfeasors, and they may be essential sources of evidence, but that does not make them necessary parties to the case.

### 3. Unfair Competition[1]

Plaintiff has alleged that the California defendants engaged in conduct contrary to honest practice and intentionally designed to gain unfair competitive advantage by causing harm to the ability of AccentCare to compete in an open and fair marketplace. Under Oregon law, agents owe independent fiduciary duties to their principals. *See Boyer v. Salomon Smith Barney*, 344 Or. 583, 188 P.3d 233, 237 (2008) ("The law of agency imposes duties on the agent; those duties 'exist [ ] independent of the contract and without reference to the specific terms of the contract.'") (citing *Georgetown Realty v. Home Ins. Co.*, 313 Or. 97, 831 P.2d 7, 14 (1992))). *See also Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.*, 15 F. Supp. 3d 1075, 1098 (D. Or. 2014). To that extent, the agent "may not compete with her principal during the course of her employment concerning the subject matter of her agency." *W. Med. Consultants, Inc. v. Johnson*, 835 F. Supp. 554, 558 (D. Or. 1993), aff'd, 80 F.3d 1331 (9th Cir. 1996) citing *Restatement (Second) of Agency* § 393 (1958). "Further, the agent cannot utilize confidential information of the principal in her subsequent competition with that principal, nor may the agent solicit customers before the termination of her agency." *Id.*

---

[1] The Court assumes that Plaintiff intends this claim to assert a violation of Oregon's agency laws, which prevent agents from competing with their principals during the course of their employment. The only statute commonly known as "Unfair Competition" in Oregon refers to ORS 646.608, which sets out unlawful trade practices meant to deceive consumers into believing that a product of one party is actually that of another. Plaintiff has not alleged facts to support such a claim. No party has raised this issue in the briefing.

To the extent that Plaintiff claims that California defendants induced Swan and Harsh-

Haynes to unlawfully compete with AccentCare, utilize confidential information, and solicit

AccentCare employees and customers, all while maintaining employment with AccentCare, this

claim is similar to those discussed above. State defendants and California defendants are alleged

to be joint tortfeasors, and Plaintiff does not have to join them in this action. For the same

reasons already discussed, the state defendants are not necessary parties.

### 4. Civil Conspiracy

The Oregon Supreme Court has not recognized civil conspiracy as a separate theory of

recovery, "rather, conspiracy to commit or aiding and assisting in the commission of a tort are

two of several ways in which a person may become jointly liable for another's tortious conduct."

*Granewich v. Harding*, 329 Or. 47, 53, 985 P.2d 788, 792 (1999). The Court concluded that that

"persons acting in concert may be liable jointly for one another's torts under any one of the three

theories identified in Restatement section 876," *id* at 56, P.2d 793, which states:

> For harm resulting to a third person from the tortious conduct of
> another, one is subject to liability if he
> (a) does a tortious act in concert with the other or pursuant to a
> common design with him, or
> (b) knows that the other's conduct constitutes a breach of duty and
> gives substantial assistance or encouragement to the other so to
> conduct himself, or
> (c) gives substantial assistance to the other in accomplishing a
> tortious result and his own conduct, separately considered,
> constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876. "The theory behind joint liability is that persons acting in

concert are liable for all the acts done in furtherance of the conspiracy. *Granewich*, 329 Or. at

57, 985 P.2d at 794. "Civil conspiracy does not merely allow possible tortfeasors to be held

liable for a co-conspirator's tort; it makes joint tortfeasors of those who conspire to commit the

tort." *Id*. Therefore, rather than adding another cause of action, this claim merely confirms what

the Court already determined above – that the California defendants and the state defendants are alleged to be joint tortfeasors and therefore may be held liable for any tortious conduct in which they participated and conspired, even if there were other actors or intermediaries who made the commission of the tort possible. As discussed thoroughly above, it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit. For all the same reasons, state defendants are not necessary.

### (b) *Hashop* and other cases are distinguishable and inapplicable to this case.

The California defendants' argument against the well-settled rule that joint tortfeasors are not necessary parties relies on *Hashop v. Fed. Home Loan Mortg. Corp.*, 171 F.R.D. 208, 211 (N.D. Ill. 1997), as well as several other cases. As discussed below, all of them are distinguishable from the case at bar, or are inapplicable to the circumstances because all of the missing or absent parties had non-financial interests that would be affected by relief requested.

In *Hashop*, the plaintiff sued FHLMC, a purchaser of mortgages on the secondary market, for tortious acts involving deliberately collecting escrow payments in excess of amounts permitted. *Id.* However, FHLMC operated only on the secondary market; it was the servicers who administered the mortgage accounts, and the servicers who established, maintained, computed, collected, adjusted and disbursed the escrow. *Id.* The court determined that FHLMC did not maintain information on whether an escrow account existed with any mortgage it purchased, nor did it maintain information on monthly payments, account balances or possible overages. This information remained with the servicer. *Id.* The court determined that in order to evaluate the plaintiff's claim, it would have to examine the manner in which each servicer handled its escrow calculations; it was the servicers who actually administered the accounts and whose acts were "at the center" of the lawsuit. *Id.* In addition, if a violation was found, it would

be the servicers who must change their escrowing practices to prevent future violations. *Id*. at 212.

*Hashop* is distinguishable and inapplicable to this case for multiple reasons. First, as an opinion from another federal district, *Hashop* is not binding on this court. Second, while the *Hashop* court briefly noted that the servicers were alleged to be joint tortfeasors, and agreed that "as a matter of law joint tortfeasors are not considered indispensable parties," the court provided very little analysis regarding why the well-settled rule should not apply in that case. Third, in *Hashop*, there were no facts to indicate that the defendant exercised any control or influence over the servicers, that it conspired with them, or that it interfered in any way with the administration of the accounts at issue. By contrast, in this case, while a significant number of the allegations involve the state defendants, Plaintiff alleges that the California defendants not only conspired, but also hatched the plan and instigated the actions ultimately taken by the state defendants. Finally, the relief requested in *Hashop* included injunctive relief to change escrowing practices to prevent future violations, while all the relief requested in this case is monetary.

In *Laker Airways, Inc. v. British Airways, PLC*, the Eleventh Circuit found that a joint tortfeasor was a necessary and indispensable party: "The interests of ACL under the circumstances presented here. . . are more significant than those of a routine joint tortfeasor. . .. Laker's antitrust claims necessarily require that a court evaluate ACL's conduct in relation to Laker, thereby substantially implicating ACL's interests." 182 F.3d 843, 847–48 (11th Cir. 1999). The evaluation the court would be required to make was whether ACL "acted in other 'than an independent manner.'" The court noted that such a ruling "would surely implicate the interests of ACL because the United Kingdom's enabling legislation, ASAR, requires that the Secretary of State for transport withdraw its approval of an appointed coordinator if its behavior

is not neutral." *Id.* at 484. Thus the missing party, ACL, would not incur only potential financial liability, but also its status as an airport coordinator. As with the injunctive relief potential in *Hashop*, the interests of the missing party in Laker Airways were more than financial. By contrast, there is no such governmental status or other non-financial interest at issue in this case for the state defendants.

In *In re Toyota Motor Corp.*, a California district court determined that the absent parties were necessary because more than their financial interests would at issue in the case. 785 F. Supp. 2d 883, 906–07 (C.D. Cal. 2011). Plaintiffs sought an injunction ordering the named defendant, Toyota, to implement a safety feature design, "which would also necessarily impact the unnamed manufacturing entities," have a preclusive effect, and "weaken their bargaining position and /or impair their ability to protect their own interests in current and future litigation." *Id.* Importantly, the court also found that the named defendant was not liable for its foreign subsidiaries' actions. *Id.* By contrast, in this case, the Court has already determined that the state defendants interests are financial, and that they would be protected by their own litigation in the state action, by an offset of any award in that case, or by a limited judgment in this case. There is no injunctive relief sought in this case, or other non-financial interest involved.

Finally, the circumstances in *Greer v. Lockheed Martin* are distinguishable from the circumstances in this case. 2010 WL 3168408, at *5 (N.D. Cal. Aug. 10, 2010). In *Greer*, the plaintiff moved to amend her complaint to add two non-diverse defendants, which would destroy the court's diversity subject matter jurisdiction. *Id.* While the court did analyze the case under Rule 19, it ultimately determined that the absent parties "could be joined under Rule 19(a)" and that "their joinder is necessary for just adjudication of at least some of Plaintiff's claims." *Id.* (emphasis added). The Court did not indicate for which claims the absent parties would be

necessary, but instead essentially found them to be permissively joined for the benefit of streamlining the litigation. *See id.* at *4 (noting "permissive terms" of § 1447(e), which grants the district court discretion when determining whether to permit joinder that will destroy diversity jurisdiction). Such an action is not possible in this case because the defendants opposed joinder in the state court action, which is already proceeding through litigation, and for which the joinder has already been denied.

### (c) The state defendants are not indispensable.

Under Rule 19(b), if a necessary party cannot be joined, the court "shall determine whether in equity and good conscience the action should proceed among the parties before it." The court must consider: (1) the extent to which a judgment rendered in the person's absence might be prejudicial to the person or to those already parties; (2) the extent to which the prejudice can be lessened or avoided by protective provisions in the judgment, by the shaping of relief, or other measures; (3) whether a judgment rendered will be adequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

Joinder of the state defendants is not feasible in this action because it would ruin diversity and deprive this court of subject matter jurisdiction.[2] As discussed above, the state defendants are not necessary to this action. However, even if they were necessary, they are not indispensable, and the case may proceed in their absence in equity and good conscience.

To the extent that the state defendants would be affected by a judgment in this case, the Court can limit any judgment to bind only the California defendants, if appropriate. The Court can also shape any relief granted as appropriate, including offsetting any award granted by the state court, if necessary. Additionally, state defendants will be able to adequately defend their

---

[2] A district court has diversity jurisdiction over civil actions between citizens of different states. 28 U.S.C. 1332(a)(1). Plaintiff and the state defendants are all citizens of Oregon.

actions and conduct in the state court proceeding. If Plaintiff prevails on its claims against the California defendants, judgment rendered will be adequate as between the parties.

By contrast, Plaintiff will not have an adequate remedy if the action is dismissed. Plaintiff has already attempted to join the California defendants to the ongoing state court proceeding, but the motion was opposed, and ultimately denied. Therefore any action against the California defendants will be forced to proceed separately from the state defendants. The Court sees no reason that such a proceeding must go forward in state court, as opposed to federal court, when the Plaintiff meets all other jurisdictional requirements. If the California defendants and the state defendants wanted to litigate these claims in one action, they should not have opposed Plaintiff's state court motion. The equities, therefore, weigh against requiring joinder. The State defendants are not necessary and indispensable parties. Defendants' motion should be denied.

## II. Defendants' request to stay the case should be denied.

California defendants have not carried their burden to show that they will suffer any hardship or inequity in the absence of a stay. They point only to the "hotly contested" nature of discovery in the state court proceeding, and the potential expense of duplicating such efforts here.[3] By contrast, it seems to the Court that both cases, and the interests of justice, would be served not by staying the case, but by coordinating discovery in both cases. It t is unclear how long it will take the state court proceeding to be fully resolved, and the court does not favor lengthy or indefinite stays without an even greater showing of need to justify it. Finally, by opposing the joinder of all defendants in the state court proceeding, the California defendants have prevented this case from being litigated in the most efficient and economical way possible.

---

[3] The Court notes that California defendants have requested Judicial Notice (#43) of three different exhibits, which are motions filed in the parallel state action. The Court does not find these to be persuasive regarding the request for a Stay. Judicial notice of these exhibits will be addressed at the end of this Opinion and Order.

Thus, the Court is less sympathetic to any claim of hardship by the defendants, which appears to be caused by their own actions. The motion for a stay should be denied, and defendants should be instructed and encouraged to coordinate discovery with the ongoing litigation in state court.

### III. The Court has personal jurisdiction over Steven Scott and HLH-East Bay.

A motion to dismiss for lack of personal jurisdiction is governed by Fed.R.Civ.P. 12(b)(2), and a district court's determination whether to exercise personal jurisdiction is a question of law. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir.2002). "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.2004). *See also Dole Food, Inc. V. Watts*, 303 F.3d 1104, 1108 (9th Cir.2002). Where, as here, the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir.1990). A "prima facie" showing means that the plaintiff has produced admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. *See Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir.2003); *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir.1995). Uncontroverted allegations in the plaintiff's complaint must be taken as true. *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996). Although the plaintiff cannot simply rest on the bare allegations of the complaint, conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Schwarzenegger*, 374 F.3d at 800.

Where, as here, there is no federal statute governing personal jurisdiction, the law of the state in which the Court sits applies. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066,

1073 (9th Cir.2011); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998). Oregon's long arm statute, Oregon Rule of Civil Procedure ("ORCP") 4, extends personal jurisdiction to the extent permitted by federal due process. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir.1990); *Tech Heads, Inc. v. Desktop Serv. Ctr., Inc.*, 105 F. Supp. 2d 1142, 1144 (D. Or. 2000).

Federal due process requires that a nonresident defendant have "certain minimum contacts" with the forum state of such a nature that the exercise of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). This constitutional test may be satisfied by showing that (1) the defendant has "substantial" or "continuous and systematic" contacts with the forum state—i.e. "general jurisdiction," or (2) there is a strong relationship between the defendant's forum contacts and the cause of action—i.e. "specific jurisdiction." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir.1986). *See also Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir.1995). The Court agrees with the defendants that no general jurisdiction exists as to Steven Scott and HLH-East Bay. Therefore the Court will address only specific jurisdiction as to the two defendants at issue.

Personal jurisdiction must be present for "each claim asserted against a defendant." *Action Embroidery Corp. v. Atlanta Embroidery, Inc.*, 368 F.3d 1174, 1180–81 (9th Cir.2004). However, a court may "assert pendent personal jurisdiction over a defendant with respect to a claim . . . so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Id.* at 1180.

The courts of the Ninth Circuit apply a three-pronged test for determining whether, in connection with a given claim, the exercise of specific personal jurisdiction over a nonresident defendant could be proper:

1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum . . .; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.1987)). The plaintiff bears the burden of satisfying the first two prongs of the test, whereupon the burden shifts to the defendant to "present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.*, (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

### a) Steven Scott and HLH-East Bay purposefully directed their activities into Oregon.

To establish purposeful direction, a plaintiff must satisfy a three-part "effects test" drawn from the Supreme Court's opinion in *Calder v. Jones*: (1) the defendant must have committed an intentional act; (2) the defendant's act was expressly aimed at the forum state; and (3) the defendant knew the brunt of the harm was likely to be suffered in the forum state. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir.2002) (citing *Calder*, 465 U.S. 783, 788–89 (1984)).

HLH-East Bay is alleged to be owned by defendants Tera Cummings, Jason Bliss, and Caroline Breeding, among others. Plaintiff claims that HLH-East Bay provided financial, logistical, and/or personal assistance to Swan and Harsh-Haynes in furtherance of the tortious interference with their contractual obligations to AccentCare. As discussed above, Plaintiff alleges that HLH-East Bay, through its employees and owners, created a fake Craigslist ad in

order to hide the fact that they were soliciting AccentCare employees through Swan and Harsh-Haynes. Additionally, Plaintiff alleges that HLH-East Bay ordered and/or paid for background checks associated with that sham application process, so that AccentCare employees could be hired by HLH-Medford.

Steven Scott is alleged to be the HLH entities' Director of Accounting. Plaintiff claims that Mr. Scott personally visited Oregon on more than one occasion to facilitate and assist in the conspiracy, and that he participated in phone calls to do the same. Mr. Scott concedes that he did visit Oregon, but that he did not engage in any tortious acts intended or aimed at Plaintiff; he claims that he merely assisted HLH-Medford in initially setting up its payroll and accounting programs. Plaintiff's entire case, however, rests on the premise that HLH-Medford was set up to undermine AccentCare's business by poaching employees and clients. Whether or not such claims are substantively meritorious is a question for a later stage of this litigation. The fact that Scott was in Medford and assisted HLH-Medford is undisputed.

Plaintiff alleges that HLH-East Bay and Scott engaged in tortious conduct that was intentional, that took place in Oregon, and that was expressly aimed at Plaintiff's business in Oregon, with the knowledge that any harm to Plaintiff would be felt in Oregon. It has properly alleged that Steven Scott and HLH-East Bay purposefully directed their activities into Oregon.

**b) Plaintiff's claims arise out of the defendants' forum-related activities.**

The second prong of the specific jurisdiction test requires that the plaintiff's claims arise out of defendant's forum-related activities. *Schwarzenegger*, 374 F.3d at 802. The Ninth Circuit applies a "but for" test under which the court must determine whether the plaintiff would not have suffered injury "but for" the defendant's forum-related conduct. *Panavision*, 141 F.3d at 1322. In this case, Plaintiff alleges that Steven Scott and HLH-East Bay came to Oregon from

California, and took affirmative actions to harm AccentCare's business by unlawfully soliciting employees and clients and by taking actions to open HLH-Medford. Therefore the claims arise out of the forum-related activities.

### c) Exercise of jurisdiction is reasonable in this case.

Once a plaintiff has met its burden on the first two prongs of the specific personal jurisdiction inquiry, the burden shifts to the defendant to show why the exercise of jurisdiction would not be reasonable and fair. *Schwarzenegger*, 374 F.3d at 802. Generally, a defendant must "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King*, 471 U.S. at 476–78). Seven factors are proscribed by the Ninth Circuit:

> the extent of purposeful interjection; the burden on the defendant to defend the suit in the chosen forum; the extent of conflict with the sovereignty of the defendant's state; the forum state's interest in the dispute; the most efficient forum for judicial resolution of the dispute; the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and the existence of an alternative forum.

*Control Sols., Inc. v. MicroDAQ.com, Inc.*, 126 F. Supp. 3d 1182, 1190 (D. Or. 2015) (quoting *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 386 (9th Cir.1990)). "The court must balance the seven factors to determine whether the exercise of jurisdiction would be reasonable." *Shute*, 897 F.2d at 386 (9th Cir.1990), (citing *Federal Deposit Ins. Corp. v. British–American Ins. Co., Ltd.*, 828 F.2d 1439, 1442 (9th Cir.1987)).

"If a court determines that a defendant has purposefully directed its actions at the forum state, as discussed above, then the purposeful interjection factor favors the plaintiff." *Adidas Am., Inc. v. Cougar Sport, Inc.*, 2016 WL 1054581, at *8 (D. Or. Mar. 14, 2016) (citing *CollegeSource*, 653 F.3d at 1080). The Court has determined that defendants purposefully directed their actions at Oregon, as discussed above. The first factor favors jurisdiction.

Second, while it is inconvenient for a defendant to defend themselves in a foreign jurisdiction, Steven Scott and HLH-East Bay share resources and attorneys with the other HLH entities and defendants, and technological advances in transportation and internet communications will relieve a substantial part of that burden. This factor weighs slightly in favor of the defendants, but it is not dispositive. *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993) *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) (holding that this factor alone is not dispositive, even when Swedish defendants would have significant burden of defending a case in California).

The third factor concerns the extent of any risk that the Court's exercise of jurisdiction in Oregon might conflict with the sovereignty of California, HLH-East Bay and Steven Scott's state of citizenship. *See Panavision*, 141 F.3d at 1323. Neither party claims that this factor is applicable.

Fourth, "the Ninth Circuit assumes that a forum state 'maintains a strong interest in providing an effective means of redress for its residents tortiously injured.'" *Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1094 (D. Or. 2016) (citing Panavision, 141 F.3d at 1323). This third factor therefore favors jurisdiction.

Fifth, regarding an efficient judicial resolution, "[t]his factor focuses on the location of the evidence and witnesses." *Id*. As with the factor considering the burden on the defendant, this factor "is no longer weighed heavily given the modern advances in communication and transportation." *Id*. However, the parties do not dispute that most of the evidence and witnesses are located in Oregon, and all of the other co-defendants are subject to personal jurisdiction in

Oregon, and will proceed with the litigation here. Therefore this factor is either neutral, or it favors jurisdiction.

Sixth, if Oregon is not a proper forum, then Plaintiffs would most likely be required to litigate this matter in California. Although litigating in an alternative forum would most likely inconvenience Plaintiffs, the Ninth Circuit does not give much weight to the plaintiff's inconvenience. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 476 (9th Cir.1995). Thus, this factor only slightly favors jurisdiction.

Seventh, the appropriate district in California is an alternative forum; however, the existence of an alternative forum only becomes an issue "when the [original] forum state is shown to be unreasonable." *Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1201 (9th Cir. 1988).* Defendants have not established that Oregon is an unreasonable forum.

Weighing these seven considerations favors finding of personal jurisdiction in this District. Defendants fail to present a compelling case that the exercise of jurisdiction would be unreasonable. Thus, the Court has specific jurisdiction over both Steven Scott and HLH-East Bay. The Court should deny their motion to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2).

## IV.    Judicial Notice

California defendants have requested Judicial Notice (#43) of three different exhibits, which are motions and orders filed in the parallel state action. The Court finds that the exhibits meet the standard for judicial notice. The motion should therefore be granted to the extent that Court takes notice of them, not for the truth of what each exhibit asserts, but for the fact that they exist as filings in a related, ongoing case in the Jackson County Circuit Court.

Nevertheless, the Court does not find the exhibits to be persuasive regarding the request for a Stay.[4] The mere fact that discovery has been contentious and voluminous in the state action does not impact the Court's view that discovery should move forward in this case. As discussed thoroughly above, if the California defendants wanted to streamline the litigation and defend all the claims against all the defendants together, they could have stipulated to the joinder of the California defendants in the state action. By opposing joinder there, the defendants have created the very problem that they now claim is too burdensome. Court is not unsympathetic to the idea that contentious discovery battles can be burdensome and costly, but the burden is on all parties to cooperate and litigate efficiently. The parties are therefore strongly encouraged to coordinate discovery to avoid duplicative costs and effort. The Court will be responsive to indications that any of the parties are impeding the process.

## RECOMMENDATION

Defendants' Motion (#25) should be DENIED. The motion for judicial notice (#42) should be GRANTED, but it does not impact the other issues in any way. Defendants should file responsive pleadings, and the case should proceed through discovery.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is entered. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. *See* FED. R. CIV. P. 72, 6.

Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

---

[4] The defendants also purport to submit the documents to "assist [the Court] in determining what issues have been litigated in the state court." The Court does not find the documents helpful in that regard. Defendants have not filed a motion to dismiss for res judicata or claim or issue preclusion, nor have they alleged that they are in privity with the state defendants, or that this Court should be bound for any other reason by the determinations made in the state court action.

DATED this ___ day of April, 2017.

MARK D. CLARKE
United States Magistrate Judge